# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **KIMBERLY COHELEY,** ) | |
| ) | |
|     **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. 4:15-cv-782-CLS** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
|     **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Kimberly Coheley commenced this action on May 8, 2015, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.[1] The case currently is before the court on claimant's motion to deem a prior claim as having been reopened for review by the ALJ.[2] Upon consideration of the motion, the Commissioner's response,[3] and claimant's reply,[4] the court concludes the motion is due to be granted.

---

[1] Doc. no. 1 (Complaint).

[2] Doc. no. 15.

[3] Doc. no. 17.

[4] Doc. no. 18.

Claimant filed her previous claim for a period of disability, disability insurance, and supplemental security income benefits on May 25, 2007, and alleged disability as of May 24, 2007. Her claim was denied at the administrative level, and, after conducting a hearing, an ALJ upheld the denial decision on July 29, 2009. The Appeals Council denied claimant's requests for review on April 25, 2011 and July 29, 2013.[5] Claimant subsequently filed an action for judicial review in this court, and was assigned Case No. 2:13-cv-1810-VEH. Judge Virginia Emerson Hopkins entered a memorandum opinion and order on December 1, 2014, affirming the Commissioner's decision that claimant was not disabled.[6] Claimant appealed Judge Hopkins's decision to the Eleventh Circuit Court of Appeals, but the appeal was dismissed on July 28, 2015, for failure to prosecute.[7]

Claimant filed her current applications for benefits on October 5, 2010, alleging disability as of July 25, 2009.[8] Those applications initially were denied at

---

[5] Tr. 18.

[6] *See* doc. no. 14 (Memorandum Opinion) and doc. no. 15 (Order) in Civil Action No. 2:13-cv-1810-VEH.

[7] *See* Order of Dismissal entered on July 28, 2015, in Case No. 15-10383-D in the Eleventh Circuit Court of Appeals.

[8] Tr. 119, 123. The ALJ's administrative opinion states that claimant's applications for benefits were filed on September 21, 2010. Tr. 18. But the application forms themselves clearly state that they were filed on October 5, 2010. Tr. 119, 123. Moreover, it appears undisputed that claimant intended to time her *second* application for benefits to take effect the day after the first ALJ's denial decision on July 29, 2009, but apparently a typographical or clerical error resulted in the Commissioner listing her alleged onset date for her second application as July 25, 2009.

the administrative level on January 6, 2011,[9] and claimant appealed to an ALJ. During the August 30, 2013 administrative hearing, the following exchange occurred between the ALJ and claimant's counsel concerning the admission of additional medical records:

> ALJ: I'll state for the record that I have reviewed these additional records, and we'll be sure that they go into the record as exhibits. I believe that most, if not all of them, are also exhibits in the earlier case that was decided by Judge Stephens, that was upheld by the Appeals Council in July of this year.
>
> Ms. Allenstein [claimant's attorney], do you have any objection to all of that entire case file being consolidated with this case file?
>
> ATTY: No objection, Your Honor.
>
> ALJ: All right. *We'll do that to give a longitudinal picture then*.
>
> (The exhibits previously identified were received into evidence and made a part of the record.)[10]

The ALJ entered a decision denying plaintiff's claims for benefits on September 27, 2013.[11] In the hearing decision, the ALJ discussed three mental health evaluations that had already been considered in connection with claimant's previous claim. First:

> On March 5, 2008, David R. Wilson, PhD., consultatively

---

[9] Tr. 69-79.

[10] Tr. 43 (alteration and emphasis supplied).

[11] Tr. 15-32.

examined the claimant at the request of her attorney.  Dr. Wilson opined that the claimant suffered from bipolar disorder and migraine headaches.  He also assigned the claimant a global assessment of functioning of 48.  Dr. Wilson opined that the claimant's level of disturbance was "so severe that it is highly unlikely that she will be able to maintain employment . . . .["]

On June 10, 2009, Dr. Wilson again evaluated the claimant at the request of her attorney.  He incorporated his previous examination into this report by using italicized type for ease of differentiation.  Dr. Wilson noted the claimant's report of not being on any medication for her bipolar disorder as it made her zombie.[*sic*]  She reported that she now had ups and downs and some difficulty with focus, but that she felt fine. She reported reading, using the computer, and cross-stitching. The claimant reported that her counselor at CED [Cherokee-Etowah-DeKalb Mental Health Center] did not take the time to talk with her.  The claimant reported being in a relationship, her daughter was doing great, and then stated that she had "lost her life."  The claimant denied any recent use of alcohol or illegal drugs.  Dr. Wilson noted the claimant to be alert and oriented with appropriate appearance.  She had intact thought processes, but talked continually such that he had to interrupt her.  She had poor judgment and insight.  The claimant reported that she liked to watch television and sit "on the front porch listening to kids and critters and talking to mama and daddy and checking my email on the computer."  She stated that she still attended church and expressed a desire to attend the upcoming Bible school.  The claimant had a good fund of general information and good mental recall.  She could perform simple math and more complex calculation with intelligence estimated to be within the low average range.  She had a mild problem with short-term memory. Upon testing with the Minnesota Multiphasic Personality Inventory II (MMPI), the claimant had somatic complaints and concerns as well as depression, variable moods, became anxious and obsessed a lot, and became manic.  Dr. Wilson again opined that the claimant had difficulties due to bipolar disorder due to not getting the treatment and medication needed such that she would have difficulty maintaining employment.  He again assigned a global assessment of functioning of

48 . . . .[12]

Additionally:

> On August 5, 2011, Dr. Grant complete[d] a medical source statement wherein he checked boxes that indicated the claimant had extreme limitation in her ability to understand and remember complex instructions; maintain attention and concentration for extended periods; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He indicated that claimant had extreme limitation in her ability to get along with co-workers without distracting them or exhibiting behavioral extremes. He indicated the claimant had marked limitation in her ability to respond appropriately to criticism from supervisors, or work in close proximity to others without being distracted by them. The claimant had marked difficulty in her ability to understand and remember simple instructions as well as the ability to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances. Dr. Grant indicated that the claimant had moderate limitation in her ability to remember work-like procedures, carry out short, simple instructions, make simple work-related decisions, and sustain an ordinary routine without special supervision. He opined the claimant had only mild limitation in her ability to interact appropriately with the general public, ask simple questions, request assistance, or to maintain socially appropriate behavior, be aware of normal hazards, take precautions for hazards, and to adhere to basic standards of neatness and cleanliness . . . .[13]

The ALJ ultimately decided to afford Dr. Wilson's opinions only little weight, stating:

---

[12] Tr. 25-26 (alterations supplied, citations to the record omitted).

[13] Tr. 27 (alteration supplied, citations to the record omitted). Dr. Grant's assessment was rendered after the first ALJ's decision, but it was submitted to the Appeals Council in support of claimant's request for review of that decision.

5

> *As stated in the previous decision*, while Dr. Wilson did actually examine the claimant, there is no evidence that he had access to the claimant's entire medical record.  His opinions appeared to be based solely on two examinations and the claimant's self-report.  Dr. Wilson opined that the claimant's "level of disturbance was so severe that it was unlikely that she would be able to maintain employment."  This opinion is simply not consistent with the medical record as a whole.  Additionally, two years after these opinions were rendered (in May 2011), the claimant spent time as a volunteer at a warehouse helping storm victims while making presentations to CED where she received global assessments of functioning with consistent steady increases over a six-month period from March through August 2011.  Therefore, little weight is given to his assessments.[14]

He afforded *no* weight to Dr. Grant's assessment, reasoning:

> The claimant presented to CED on March 11, 2011; May 10, 2011; July 22, 2011; and August 3, 2011.  During those visits, the claimant's global assessment of functioning increased from 59 to 60 to 62.  The claimant was observed to be stable and to have level, appropriate mood . . . .  Such reports are simply inconsistent with the medical source statement of August 5, 2011, that showed marked and extreme limitations.  The statement is inconsistent with [Dr. Grant's] own treating records.[15]

Claimant never requested the ALJ or the Appeals Council to reopen her previous claim.  Even so, she asserts that the ALJ's consideration of Dr. Wilson's and Dr. Grant's opinions in the present case amounted to a *de facto* reopening of the previous claim.  As the Eleventh Circuit held in *Sherrod v. Chater*, 74 F.3d 243 (11th Cir. 1996):

---

[14] Tr. 29 (emphasis supplied).

[15] Tr. 29 (record citations omitted).

6

> The district court's jurisdiction in this case is limited by the Social Security Act, and judicial review only exists over "final decisions of the [Commissioner]." 42 U.S.C. § 405(g). As a general matter, district courts do not have jurisdiction over the [Commissioner]'s refusal to reopen a claim since such a refusal is not a "final decision" within the meaning of section 405(g). *Califano v. Sanders*, 430 U.S. 99, 107-08, 97 S. Ct. 980, 985-86, 51 L. Ed. 2d 192 (1977); *Stone v. Heckler*, 778 F.2d 645, 646-47 (11th Cir. 1985). Nevertheless, subject matter jurisdiction will exist in those cases where "*a social security claim is in fact reopened and reconsidered on the merits* **to any extent** *on the administrative level*." *Macon v. Sullivan*, 929 F.2d 1524, 1529 (11th Cir. 1991); *see also Passopulos v. Sullivan*, 976 F.2d 642, 645-46 (11th Cir. 1992).

*Sherrod*, 74 F.3d at 245 (alteration and all emphasis supplied).

It cannot be denied that the ALJ in the present matter reconsidered the merits of claimant's prior claim to some extent. The ALJ specifically discussed medical evidence that had been submitted in support of the prior claim, and he made a finding that he agreed with the manner in which the previous ALJ treated that evidence. The Commissioner asserts that the "ALJ's consideration of [Dr. Wilson's and Dr. Grant's] opinions did not amount to a reconsideration of the prior decision on the merits, given his stated purpose for consolidating the older evidence from the prior claim with the current case file."[16] The Commissioner also points out that the current ALJ "did not disturb" the previous ALJ's findings about the doctors' opinions.[17] Those two points

---

[16] Doc. no. 17 (Commissioner's Opposition to Plaintiff's Motion to Deem Prior Claim Reopened), at 4 (alteration supplied).

[17] *Id.*

are not relevant, however, because the case law does not carve out any exception for situations in which an ALJ reviews evidence from a prior decision to obtain context — that is, "to give a longitudinal picture" of the claimant's condition over time — or when he agrees with the previous ALJ's findings. Instead, the only exception is when the ALJ reviews the prior opinion in order to determine whether the new claims are barred by the doctrine of *res judicata*. *See Brown v. Sullivan*, 921 F.2d 1233, 1237 (11th Cir. 1991) ("[T]he Secretary must be allowed to evaluate newly proffered evidence to determine whether to reopen the case. . . . If the Secretary merely considers newly proffered evidence without reconsidering the merits of the previously denied application, then he has not reopened that application. . . .) (alteration supplied, citations omitted).

By reviewing the merits of claimant's prior claim, the ALJ *de facto* reopened that claim. Accordingly, claimant's motion to deem her prior claim as reopened is GRANTED. That does not mean, however, that every aspect of the prior claim will be reviewed. As the Eleventh Circuit held in *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996):

> When we determine that an ALJ has reopened a prior decision, we have jurisdiction to review the prior decision to the extent that it has been reopened. *See Robertson v. Sullivan*, 979 F.2d 623, 625 (8th Cir. 1992) (*per curiam*). On review, our task is to determine if the Secretary's denial of disability is supported by substantial evidence. 42 U.S.C. §

405(g) (Supp. 1995). We have the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." *Id.* If we determine that the errors in a prior decision would entitle the claimant to benefits that he has been denied, then we should remand the case for a reexamination of the prior closed application. *See Jelinek v. Heckler*, 764 F.2d 507, 509-11 (8th Cir. 1985).

Thus, the court will consider claimant's prior claims to be reopened, but only for purposes of reconsidering the opinions of Drs. Wilson and Grant.

The court recognizes that the parties may wish to submit additional briefs to addresses issues from the reopened prior claim.[18]  Claimant must file any such brief on or before March 21, 2016.  The Commissioner may file a response brief on or before April 4, 2016.

DONE this 7th day of March, 2016.

_____
United States District Judge

---

[18] The parties already have submitted briefs on the issue of claimant's disability.  *See* doc. no. 10 (claimant's brief); doc. no. 13 (Commissioner's brief); doc. no. 15 (claimant's reply brief).